UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ALEXANDER JAMES, <br><br> Plaintiff, <br><br> v. <br><br> UNITED FURNITURE WORKERS LOCAL 89262, <br><br> Defendant. | Case No. 21-cv-03893-JCS <br><br> **ORDER REGARDING MOTION TO DISMISS** <br><br> Re: Dkt. No. 4 |

## I.  INTRODUCTION

Plaintiff Anthony Alexander James brought this action asserting various clams against Defendant United Furniture Workers Local 89262 (the "Union") related to the Union's representation of James during his employment and subsequent termination at Sealy Tempur-Pedic ("Sealy").[1]  The Union now moves to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the Union's motion is GRANTED, and James's complaint is DISMISSED with leave to amend no later than September 24, 2021.[2]

## II.  BACKGROUND

### A.  Procedural History

James initially filed this action pro se in the California Superior Court for Alameda County.  *See generally* Compl. (dkt. 1-1).  He asserted state law claims including negligence, fraud, and race discrimination under California's Fair Employment and Housing Act ("FEHA").

---

[1] James's employer was named in a previous lawsuit as "Tempur Sealy International, Inc." Resolving which name is correct is not material to the outcoming of the present motion.
[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

*Id.* at 6–7, 10–12. The Union removed the case to federal court on May 24, 2021. Not. of Removal (dkt. 1).

### B. James's Complaint

Because a plaintiff's factual allegations are generally taken as true on a motion under Rule 12(b)(6), this section summarizes the allegations of James's complaint as if true. Nothing in the order should be construed as resolving any issue of fact that might be disputed at a later state of the case.

James, an "African American male," Compl. at 10,[3] worked as a driver for Sealy, a mattress business, from 2011 until he was terminated by Sealy in 2016. Compl. at 9–10. The Union represented employees at Sealy who paid union dues. *Id.* Some time prior to James's termination in 2016, Sealy forged documents that suggested that he had been suspended from his job at Sealy three separate times—suspensions that had not actually occurred. *Id.* at 9, 11. On the basis of the inaccurate information in the forged documents and James having clocked in three minutes early on March 22, 2016, Sealy terminated James. *Id.* James alerted the Union of his termination and the forged documents, and the Union informed James that it would file a grievance on James's behalf. *Id.* at 9. Three months after James's termination, the Union notified James that they would not be able to help him; the Union based this determination on the forged documentation indicating that James was suspended three times. *Id.*

James subsequently reached out to the National Labor Relations Board ("NLRB") to seek help. *Id.* The NLRB contacted the Union, and a meeting was set up to review James's personnel files, at which time the Union became aware that the documentation of James's suspensions lacked necessary signatures. *Id.* However, James alleges that the Union was aware of the "act" prior to this meeting. *Id.* at 11. James requested that the Union direct Sealy to reinstate him in his previous position and compensate him with back pay. *Id.* at 9. Instead, James was offered less

---

[3] James's complaint consists of multiple documents (including state court forms, a document labeled "attachment" that contains factual allegations and a demand for payment, and copies of several emails and other supporting documentation) without any clear page or exhibit numbering. This order therefore cites pages of the complaint and its attachments using the page numbers assigned by this Court's ECF filing system to docket entry 1-1.

money than he was requesting and was asked to agree to a "Last Chance contract" and drug testing. *Id.* James declined the deal and asked the Union to take his grievance to arbitration. *Id* at 9–10. James was then terminated. *Id.* at 10.

In 2019, James sued Sealy. *Id.*; *see James v. Tempur Sealy Int'l, Inc.*, No. 18-cv-07130-SI (N.D. Cal.). During that litigation, which eventually settled,[4] James and his attorneys discovered that the Union and Sealy corresponded about James's three forged suspension documents prior to James's termination. Compl. at 9. James alleges that "non-African American[s] . . . have options . . . based on [the] union employee contract" that were not accorded to James, including filing grievances, meeting with union representatives about disciplinary actions, and securing union witnesses to disciplinary actions. *Id*. at 11. James further alleges that Sealy fired him based on information that the Union knew was false and without the Union taking his case to arbitration, none of which would have happened if James was "non-African American." *Id.* According to James's complaint, a "majority of the African American driver[s] [felt] discrimination," and there was at least one other African American driver who was terminated by Sealy under similar circumstances with the Union's knowledge. *Id.* at 12.

In emails and other documents attached to James's complaint, Union personnel and attorneys state that although Sealy acknowledged wrongdoing and fired a supervisor who forged at least one signature, negotiations with Sealy were undermined by confrontational interactions between James and other Sealy employees, and the Union intended to withdraw its grievance if James did not accept a $10,000 settlement offer. *Id.* at 14–21. Viewing the complaint in the light most favorable to James, the Court understands the inclusion of those documents as alleging that they existed, but not as alleging the truth of their contents—in particular, for the purpose of this motion to dismiss, the Court does not take as true the Union's statements that James acted confrontationally.

Various portions of James's complaint differ as to the claims he is asserting. A state court

---

[4] The undersigned magistrate judge served as the settlement judge for the previous case against Sealy. At the hearing on August 13, 2021, James and the Union consented to the undersigned presiding over this case despite that previous role.

3

civil cover sheet indicates that he is asserting claims for unfair business practices, defamation, fraud, and wrongful termination. *Id.* at 3. The first page of his state court form complaint indicates that he is asserting a contract claim. *Id.* at 4. Other portions of the form complaint indicates that James is asserting a fraud claim based on "Intentional or Negligent Misrepresentation . . . On Wrongful Termination" and false promise, and a negligence claim. *Id.* at 6–8. The narrative portion of James's complaint asserts a claim for race discrimination under FEHA. *Id.* at 10–11. Near the end of the narrative portion of his complaint, James refers to claims for unfair business practices, misrepresentation, race discrimination, and negligence. *Id.* at 12. James attaches a notice of right to sue issued by the Equal Employment Opportunity Commission ("EEOC") on January 21, 2021. *Id.* at 22. James states that he would like to settle his claims for $200,000. *Id.* at 12.

### C. The Union's Motion to Dismiss

The Union moves to dismiss James's complaint on the basis that his complaint is factually vague, and that the claims which are identifiable are preempted by federal law and barred by the statute of limitations. *See* Mot. (dkt. 4).

The Union argues that all of James's claims are preempted by the Union's duty of fair representation under section 9 of the National Labor Relations Act ("NLRA"). *Id.* at 5 (citing 29 U.S.C. § 159). The Union cites Supreme Court precedent holding that a union's duty of fair representation requires it "'to represent all members . . . without hostility or discrimination toward any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)) (ellipsis in original). The Union contends that this statutory duty preempts any state regulation of union activity "performed in the negotiation, administration, and enforcement of a collective bargaining agreement . . . including handling employee grievances." *Id.* (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986)). Because James bases his complaint on the Union's decision not to take James's grievance to arbitration, the Union argues that James's claim is based entirely on actions which fall within the scope of the Union's duty of fair representation. *Id.* at 7.

4

The Union argues further that, once James's claims are properly construed as preempted by federal law, each of James's claims is barred by the NLRA's six-month statute of limitations, which "'generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union.'" *Id.* at 7–8 (quoting *Galindo*, 793 F.2d at 1509, and citing, *e.g.*, *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983)). Because James's claims arise out of actions which the Union allegedly took in 2016 and which James must have been aware of no later than the August 4, 2020 settlement of his case against Sealy, the Union contends that James's filing of his complaint on April 12, 2021 fell outside the limitations period.[5] *Id.* at 8–9. The Union concludes that the Court should dismiss without leave to amend because the complaint is "clearly and unequivocally time-barred." *Id.* at 14.

The Union argues in the alternative that, even if James's claims were not time barred, James does not plead sufficient facts to support his claims. *Id.* at 10. According to the Union, "Plaintiff's own Complaint… shows that the Union acted reasonably and in good faith in processing and settling [James's] grievance." *Id.* at 11–12. The Union contends that the exhibits that James attached to the Complaint establish that James's engaged in "intemperate conduct" when asked to take a drug test, and that he "acted in a threatening and angry manner towards Company representatives, causing the Company to rescind its offer of reinstatement." *Id.* at 11. The Union further contends that it chose not to take James's request for reinstatement to arbitration based on a "reasonable belief that an arbitrator would be unlikely to order reinstatement given [James's] aggressive and inappropriate behavior towards the employer." *Id.* The Union argues that the attachments to James's complaint demonstrate that Union evaluated James's case fairly and negotiated with Sealy on James's behalf in good faith. *Id.* Based on these contentions, the Union argues that James cannot make out a prima facie case of the Union's breach of the duty of fair representation, as under Ninth Circuit law, such a breach occurs when a union's actions are "either 'arbitrary, discriminatory, or in bad faith.'" *Id. at* 10 (quoting *Simo v. Union of*

---

[5] The Union also argues that the details of James's complaint reveals that he knew of the alleged forgeries, the Union's refusal to take his grievance to arbitration, and the Union's purported knowledge of the forgery of James's names on the disciplinary documents as far back as 2016. Mot. at 8 & n.3.

5

*Needletrades*, 316 F.3d 974, 981 (9th Cir. 2003)).

With respect to James's allegation that the Union allowed Sealy to forge his signature on disciplinary documents, the Union argues that this allegation runs afoul of the standard articulated in *Iqbal* that "'[n]aked assertions devoid of further factual enhancement'" are inadequate. *Id*. at 12–13 (quoting *Iqbal*, 556 U.S. at 678). The Union contends that James's allegation of disparate treatment of African American employees are similarly conclusory. *Id*. at 13. The Union also once again argues that because it based its decision not to pursue James's grievance on the fact that James purportedly became hostile towards Sealy management, the Union's decision was reasonable and not based in a discriminatory intent. *Id*. at 13–14.

### D. James's "Motion Not to Dismiss"

In a filing titled "Motion Not to Dismiss," which the Court construes as an opposition brief filed pursuant to Civil Local Rule 7-3(a), James does not respond to the Union's arguments and instead asserts a new set of facts and advances new legal theories. *See* Mot. Not to Dismiss ("Opp'n," dkt. 8). James asserts that he "worked hard in his job" for Sealy, and that his manager up until 2014, Dave McKenzie, thought highly of his work and gave him a pay raise and an excellent performance review. *Id*. at 3. James asserts that customers and other senior managers also felt positively about his work at Sealy. *Id*. James describes his job as requiring him to inspect the truck he drove to deliver mattresses and record information related to this task in a logbook. *Id*. At some point towards the end of 2015, Sealy changed James's logbook to an electronic format from a paper format. *Id*. at 4. According to James, this electronic system did not reliably record information, and it was this defect that sparked the conflict between James and Sealy that led to James's termination. *Id*.

James asserts that on March 21, 2016, he used the electronic system to log into work three minutes prior to the start of his shift, but when he realized his mistake and attempted to log out without starting work in order to log back in five or ten minutes later, the electronic system would not allow him to do so. *Id*. James states that he then called and texted his manager, Lester Sequeira, to request assistance and advice on how he should proceed, but Sequeira did not respond. *Id*. James decided to begin his job anyway using a paper log, and he made deliveries

throughout that day. *Id.* According to James, Sequeira asked James to meet with him and human relations manager Ryan Degooyer on March 22, 2016 about James's "violation" of clocking in three minutes earlier the previous day. *Id.* James states that he was informed he would be suspended for two days, but in fact did not work for an entire month after the meeting, and when he contacted union representative Ulises Vergara to file a grievance, no one followed up with him. *Id.*

James asserts that a month after his March 21, 2016 purported violation, Sequeira met with James to ask James to sign "termination papers," and James noticed that Sealy had documentation of two additional suspensions that did not take place. *Id.* at 5. James states that he again reached out to Vergara in order to file a grievance, but Vergara chose not to respond to James's request until July 14, 2016, when Vergara responded with a letter contending that James was suspended from Sealy for two days in December 2015 and two days in January 2016, and that because James had three suspensions within a 12-month period, James's termination occurred in accordance with Sealy's "driver manual." *Id.* Based on these contentions, Vergara declined to meet with James about filing a grievance or setting up an arbitration. *Id.*

James states that he then reached out to the NLRB to request personnel files held by Sealy, and Vergara met with him in August of 2016 to view these files. *Id.* According to James, he and Vergara discovered that the purported suspensions on December 14, 2015; December 15, 2015; and January 25, 2016 "were sign[ed] by someone other than Mr. James," forging his signature. *Id.* James further contends both that no union witness signed these documents despite a contractual obligation to do so and that the Union was aware that Sealy forged James's name on the documents. *Id.* at 5–6.

James states that at some point later, Sealy and the Union presented him with a settlement offer contingent upon completing a "hair test," which James refused, and that he was then terminated by Sealy. *Id.* at 6. In his "Motion Not to Dismiss" James asserts the following claims, some of which also appear in his complaint: wrongful termination in violation of public policy, breach of contract (citing 41 U.S.C. § 6503), fraud, and retaliation in violation of FEHA. *Id.* at 6–10. James asserts that that he filed a timely FEHA charge with the Department of Fair

7

Employment and Housing, citing "Exhibit A," but this filing includes no exhibits. *See id.* at 10.

### E. The Union's Reply

In its reply brief, the Union argues that James's new allegations and legal theories set forth in his "Motion Not to Dismiss"—including the details purportedly leading to his termination and his purported exhaustion of state administrative remedies—cannot be considered in resolving the motion to dismiss, which turns on the sufficiency of James's complaint. Reply (dkt. 12) at 2–3. The Union contends that James's new legal theories of intentional infliction of emotional distress (which he cites in passing in an introductory section of his response, but does not clearly assert as a claim) and retaliation under FEHA should not be considered because they are not present in his complaint. *Id.* at 3.

The Union argues in the alternative that, even if the new allegation and legal theories were considered, all of James's claims would be preempted under the Union's federal duty of fair representation because they arise out of the Union's conduct representing James, and all are barred by the six-month statute of limitations for asserting such a claim. *Id.* at 3–4. The Union also argues that James's allegations in both his complaint and his "motion not to dismiss"—including that the Union was aware of the purported forgeries of James's signature, that the Union itself falsified information on the disciplinary documents, and that the Union discriminated against James based on his race—fail to meet the plausibility standard required by Supreme Court precedent. *Id.* at 5–6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts "should freely give leave when justice so requires." *Id.* Further, when it dismisses the complaint of a pro se litigant with leave to amend, "'the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "'Without the benefit of a statement of deficiencies, the pro litigant will likely repeat previous errors.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B. At Least Some of James's Claims Are Preempted

The Union removed to this Court on the basis that James's claims are preempted by section 9 of the NLRA, which the Supreme Court has long interpreted as imposing a duty "to serve the interests of all members without hostility or discrimination," not only with respect to negotiating a collective bargaining agreement, but also "in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "The vast majority of duty of fair representation claims arise in the grievance procedure context: the employee claims that a union failed to process a grievance or mishandled its presentation." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). The Ninth Circuit has held that this duty of fair representation preempts at least some state law claims that seek to regulate unions' handling of grievances:

> The federal statutory duty which unions owe their members to represent them fairly . . . displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. State law may "constitute an impermissible obstacle to the accomplishment of purposes of Congress by regulating conduct that federal law has chosen to leave unregulated." *Condon v. United Steelworkers of Am.*, 683 F.2d 590, 594 (1st Cir. 1982). The doctrine of fair representation serves both as a limited check on the arbitrary exercise of union power and, through its limitations, allows unions wide latitude in effectively serving the interests of the bargaining unit. *See United Steelworkers of Am. v. Rawson,* 495 U.S. 362, 374 (1990). To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship. *Id.* Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining

10

representative, such as an express provision of the collective bargaining agreement or a collateral contract. *Id.* *Adkins v. Mireles*, 526 F.3d 531, 539–40 (9th Cir. 2008).

Courts have routinely held that the duty of fair representation preempts generic state-law claims that are based on a union's failure to pursue a grievance or otherwise represent its members' interests. *See, e.g.*, *id.* at 540–42 (holding claims for breach of contract, breach of the implied covenant of good faith, negligent misrepresentation, and intentional infliction of emotion distress preempted by the duty of fair representation); *Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*, 203 F. Supp. 3d 1024, 1033 (N.D. Cal. 2016) (holding preempted claims for breach of the covenant of good faith and unfair business practices because they "relate[d] to Defendants' breach of duty to fairly represent Plaintiffs in their capacity as union representatives"); *Wright v. N. Am. Terrazo*, No. C12-2065JLR, 2013 WL 441517, at *5–7 (W.D. Wash. Feb. 5, 2013) (holding claims for negligence, breach of contract, wrongful termination, and others preempted); *Martinez v. Kaiser Found. Hosps.*, No. C-12-1824 EMC, 2012 WL 2598165, at *9 (N.D. Cal. July 5, 2012) (holding a claim for intentional infliction of emotional distress preempted because "the alleged outrageousness of the Union's actions is, in essence, predicated on its status as Ms. Martinez's exclusive collective bargaining representative").

Here, to the extent James asserts claims for breach of contract, *see* Compl. at 4, unfair business practices, *id.* at 3, 12, wrongful termination, *id.* at 3, and negligence, *id.* at 12, all of those theories appear to turn solely on the Union's failure to pursue a grievance and prevent James's termination. They are therefore preempted the NLRA's duty of fair representation.

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. . . . One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Under such circumstances, courts will "recharacterize a state law complaint displaced by [federal law] as an action arising under federal law." *Id.* at 64. Since preemption by the duty of fair representation is one such instance of federal law "displac[ing] state law," *see Adkins*, 526 F.3d at 539–40 & n.4, James's preempted claims are

11

properly construed as asserted under the NLRA. The Court therefore has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331, and the Union's removal was proper.[6]

The statute of limitations for a claim for breach of the NLRA's duty of fair representation is six months. *Kolombo v. Hughes Market Inc.*, 886 F.2d 258, 259 (9th Cir. 1989). "[T]he six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo*, 793 F.2d at 1509. In the typical case "where a union decides not to file a grievance[,] the cause of action generally accrues when the employee learns or should have learned of the union's decision." *Id.* Here, the Union declined to pursue a grievance when James was fired in 2016, several years before he filed this case on April 12, 2021. *See* Compl. at 3 (cover sheet showing the date of filing); *id.* at 9 (alleging James was fired in 2016); *id.* at 14 (email dated November 1, 2016 indicating that James had one week to decide whether to accept a $10,000 settlement, and that the union would withdraw the grievance if he did not). Assuming for the sake of argument that James's claim instead accrued at the time he alleges he learned the Union purportedly coordinated with Sealy, James alleges that occurred through discovery "after the company deposition in 2020" in the course of his previous lawsuit against Sealy. Compl. at 10. The Court takes judicial notice that the previous case was dismissed on August 27, 2020 based on the parties' settlement. *See James v. Tempur Sealy Int'l, Inc.*, No. 18-cv-07130-SI, ECF Doc. No. 89 (N.D. Cal. Aug. 27, 2020). The previous case terminated more than six months before James filed his present case against the Union, so any claim for breach of the duty of fair representation is time-barred even if the limitations period began to run while the previous case was pending.

Accordingly, the Union's motion to dismiss is GRANTED as to James's claims for breach of contract, unfair business practices, wrongful termination, and negligence, all of which are properly construed as claims for breach of the duty of fair representation under section 9 of the

---

[6] The Court has supplemental jurisdiction over any claims properly asserted under state law pursuant to 28 U.S.C. § 1367. If, after the pleadings are settled, only state law claims remain, the Court will consider declining supplemental jurisdiction under § 1367(c) and remanding to state court. At this point, however, when it is not clear if any state law claims are properly asserted or whether James might be able to amend to state a viable federal claim, remand would be premature.

12

NLRA, and were not filed within the applicable statute of limitations for such a claim. While it is not clear how James could amend to cure these defects—none of the new allegations in his "motion not to dismiss" would do so, even if properly alleged in an amended complaint—it is conceivable that he could allege facts sufficient to support some tolling doctrine for the statute of limitations, or that he could show that his claims are distinct from the duty of fair representation. In an abundance of caution, the Court grants leave to amend as to these claims.

### C. James's FEHA Claim Fails to Allege Exhaustion

The claim most clearly asserted in James's complaint is for discrimination based on race in violation of FEHA. Compl. at 10–11. FEHA makes it unlawful for a labor organization "to discriminate in any way against any of its members," including based on race. Cal. Gov't Code § 12940(b).

The Union is correct that some district court decisions have held FEHA discrimination claims, or similar claims under the laws of other states, preempted the NLRA where they arise from a union's alleged failure to provide fair representation. Mot. at 6 (citing, *e.g.*, *Guidry v. Marine Eng'rs' Beneficial Ass'n*, No. C 11-05347 CRB, 2012 WL 646302, *9 (N.D. Cal. Feb. 28, 2012); *Madison v. Motion Picture Set Painters & Sign Writers Loc. 729*, 132 F. Supp. 2d 1244, 1257 (C.D. Cal. 2000)). None of the cases on which the Union relies for this point addressed the Ninth Circuit's discussion of the issue in *Adkins*. In an unpublished memorandum disposition, however, the Ninth Circuit held that a plaintiff's FEHA claim was preempted by section 310 of the Labor Management Relations Act[7] because it implicated the duty of fair representation arising from a collective bargaining agreement, with Judge Bea concurring that the preemption at issue was better viewed as arising from "the union's statutory duty of fair representation," presumably referring to section 9 of the LMRA. *See generally Hardine v. Off. & Pro. Emps. Int'l Union*, 475 F. App'x 103 (9th Cir. 2012). Both the majority opinion in that case and the concurrence cited *Adkins*. *See id.* At least one district court applying *Adkins* has held an analogous discrimination

---

[7] The Union has not argued that any claim in this case is preempted by section 301. As a "general rule . . . FEHA claims are not preempted by section 301." *Klausen v. Warner Bros. Television*, 158 F. Supp. 3d 925, 934 n.4 (C.D. Cal. 2016).

13

claim under Washington law preempted. *Wright*, 2013 WL 441517, at *6.

On the other hand, in a decision addressing *Adkins*, Judge Chen held that "[w]hile the duty of fair representation may also provide a remedy for the alleged discrimination, that does not mean that the right to obtain a remedy based on an independent source is thereby . . . negated and displaced." *Martinez*, 2012 WL 2598165, at *7. Accordingly, even though the plaintiff's claims in that case turned on allegations that her union "failed to file and pursue appropriate grievances," *id.* at *1, Judge Chen held that FEHA's establishment of "certain rights not [to] be discriminated against," independently of rights conferred under the NLRA, was not preempted, *id.* at *7–8. At least one subsequent decision has followed that holding. *Padilla v. Pac. Bell Tel. Co.*, No. CV 14-09760 DDP (JPRx), 2015 WL 728695, at *5 (C.D. Cal. Feb. 19, 2015). The Court is aware of no subsequent decision specifically rejecting it. The Union's briefs here do not address either *Martinez* or *Padilla*.

It is difficult to square Judge Chen's decision in *Martinez*—that a plaintiff's FEHA claim was not preempted—with the Ninth Circuit's non-precedential decision in *Hardine* finding similar claims preempted by either section 301 or the statutory duty of fair representation. While Judge Chen is correct that FEHA imposes a duty not to discriminate separately from any duty arising under the NLRA, in the context of a claim for failure to pursue a grievance, that duty is intertwined with the union's role as the employee's representative. It is not a separate obligation voluntarily undertaken by the parties, such as the hypothetical "express provision of the CBA or . . . collateral contract that imposed additional enforceable duties" specifically contemplated in *Adkins*, 526 F.3d at 540, but instead arises from the employee's status as a member of the union, *see* Cal. Gov't Code § 12940(b). There is at least an argument that FEHA's regulation of unions, as applied to claims for failure to pursue a grievance, is the sort of "state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative" that *Adkins* held preempted. *See* 526 F.3d at 539.

In the absence of any argument from the Union addressing the district court decisions rejecting preemption of FEHA claims by the duty of fair representation, this Court declines to resolve whether FEHA's antidiscrimination provisions, applied in this context, are the sort of

14

state-imposed "duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative" that are preempted by the NLRA, or instead the sort of "additional duties . . . beyond the normal incidents of the union-employee relationship" that escape preemption. *See Adkins*, 526 F.3d at 539. Because, as discussed below, James's FEHA claim requires dismissal on its own merits, the Court need not resolve the question of preemption at this time.

The Court is not persuaded that James's allegations are too conclusory to allege discrimination. FEHA discrimination claims against unions under section 12940(b) are analyzed under substantially the same standard as discrimination claims against employers under FEHA or Title VII. *See Madsen v. Associated Chino Tchrs.*, 317 F. Supp. 2d 1175, 1180 (C.D. Cal. 2004) (consideration a claim for discrimination based on religion). At summary judgment, the claim would be subject to the prima facie case and burden shifting frameworks of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Madsen*, 317 F. Supp. 2d at 1181. The Ninth Circuit has made clear, however, that even after *Iqbal*, a complaint asserting a discrimination claim need not meet that test to survive a motion under Rule 12(b)(6) so long as it supports a plausible inference of discrimination. *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019); *Drevaleva v. Dep't of Veterans Affs.*, 835 F. App'x 221, 223 (9th Cir. 2020). James alleges that the Union failed to provide him and another African American driver the same representation it provided non-African American employees facing discipline, despite knowing that James's and the other driver's terminations were based on forged documents. Compl. at 11–12. These allegations are sufficient to meet the standard of Rule 8(a) and *Iqbal*.

Whether James has sufficiently alleged discrimination does not end the inquiry of whether he may proceed on a FEHA claim. "Under FEHA, a plaintiff must exhaust his or her administrative remedies by filing a complaint with a state investigatory agency before bringing a civil suit." *Coleman v. S. Wine & Spirits of Cal., Inc.*, No. 11-00501 SC, 2011 WL 5520983, at *4 (N.D. Cal. Nov. 14, 2011) (citing *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal. App. 4th 1505, 1509–1510 (1996)). James attached to his complaint a right-to-sue letter from the federal EEOC. Compl. ¶ 22. Such letters generally permit a plaintiff to bring a claim under Title VII, but

15

do not satisfy the separate requirement under California law that in order to bring a claim under FEHA, a plaintiff must generally receive a right-to-sue letter from the California Department of Fair Employment and Housing ("DFEH").  A right-to-sue letter from the EEOC is not a substitute for a right-to-sue letter from the DFEH for the purpose of state law claims under FEHA.  *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994).

Based on cross-filing agreements between the EEOC and the DFEH, an administrative charge filed with the EEOC might in at least some circumstances also place the DFEH on notice of a plaintiff's claims.  *See Reed v. UBS Sec., LLC*, No. C 09-5237 MHP, 2010 WL 3119200, at *2–4 (N.D. Cal. Aug. 3, 2010).  Even so, California law allows the DFEH a period of one year before it is required to act on such a claim, *id.* at *4, and James has not alleged either that he received a right-to-sue letter from the DFEH or that a year passed without the DFEH taking action on his claim.

The Court declines to consider James's assertions in his "motion not to dismiss" that he "filed a timely charge against defendant with the DFEH alleging, interiliac [sic], retaliation" and "received from the DFEH notification of his right to sue."  Opp'n at 10.  Subject to narrow exceptions for judicial notice not applicable here, review under Rule 12(b)(6) is limited to the allegations of a complaint, and "'new' allegations contained in [an] opposition motion . . . are irrelevant for Rule 12(b)(6) purposes."  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Moreover, James suggests he filed an administrative complaint for retaliation rather than discrimination, and his assertion that he exhausted his remedies is likely too conclusory to be credited even if had been included in his complaint.

James's FEHA claim is therefore DISMISSED for failure to allege compliance with FEHA's administrative exhaustion requirement, with leave to amend if he can allege such compliance.  If James wishes to pursue his claim under FEHA, he must file an amended complaint addressing the circumstances of his administrative complaint in more detail, including whether his administrative complaint encompassed a discrimination claim against the Union, and whether and when he received a right-to-sue letter from the DFEH.  James may wish to attach his administrative complaint and right-to-sue letter, if any, to his amended complaint.

If James is able to amend to cure this deficiency regarding administrative exhaustion, the Court will consider at that time whether his FEHA claim is preempted by the federal duty of fair representation.

### D. James Fails to Provide Sufficient Notice of Any Other Claim

James's complaint includes fleeting references to other legal theories, such as defamation and fraud. It is not entirely clear from his complaint whether James wishes to pursue those claims or what factual allegations he bases them on. While the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for *imperfect* statement of the legal theory supporting the claim asserted," they require at least "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added). A claim sounding fraud must also comply with the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which call for more specific factual allegations than required for other claims. James's complaint, with its compilation of various state court forms and a narrative section that only clearly asserts a claim for race discrimination, does not sufficiently put the Union on notice of any other claims. Those claims are DISMISSED with leave to amend.

James's "motion not to dismiss," while not presented as a complaint and perhaps deficient in substance, follows the general format for a complaint in federal court.[8] Any amended complaint filed in response to this order should consist of consecutively numbered paragraphs setting forth all factual allegations relevant to James's claims, followed by sections setting forth each claim James wishes to assert, and concluding with a prayer for relief.

### IV. CONCLUSION

For the reasons discussed above, James's complaint is DISMISSED with leave to amend. If James believes that he can cure the defects identified in this order, he may file an amended complaint no later than September 24, 2021. Any amended complaint must include the caption

---

[8] To the extent that the "motion not to dismiss" could potentially be construed as an amended complaint, the Court declines to do so since it is not captioned as such, and James has an opportunity to assert whatever claims he wishes to pursue in a true amended complaint in response this order.

17

and case number (21-cv-03893) appearing on this order and the words "FIRST AMENDED COMPLAINT" on the first page, and must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of James's original complaint by reference, but instead must include all of the facts and claims James wishes to present and all of the defendants he wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

James, who is not represented by counsel, is encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance if he continues to pursue this case.  Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation.  Although in-person appointments are not currently available due to the COVID-19 public health emergency, James may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated: August 16, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge